UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

U.S. BANK NATIONAL ASSOCIATION,

                Plaintiff,              Civil Action No.:  08cv2540(DC)

vs.

ABLES & HALL BUILDERS, a Kentucky
General Partnership; RONNIE ABLES,
DENNIS WADE ABLES and JAMES A.        ECF CASE
HALL, its General  Partners,

                Defendants.

---

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S COMPLAINT

Stephen G. Traflet
TRAFLET & FABIAN
1001 Avenue of the Americas
11th Floor
New York, NY  10018
Tel:    212.244.6199
straflet@trafletfabian.com


John David Dyche
Fultz Maddox Hovious & Dickens PLC
2700 National City Tower
101 South Fifth Street
Louisville, KY  40202-3116
Tel:    502.588.2017 (Direct Dial)
jdddyche@fmhd.com

Attorneys for Defendants
Ables & Hall Builders, Ronnie Ables,
Dennis Wade Ables and James A. Hall

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ....................................................................................................3

I.    INTRODUCTION .......................................................................................................6

II.   FACTS ........................................................................................................................7

III.  ARGUMENT

      A.    Summary of Defendants' Arguments ...............................................................10

      B.    Kentucky Law Applies to the Threshold Question of Whether the Master Agreement Satisfies the Statute of Frauds ..........................................................11

      C.    The Master Agreement Fails to Satisfy Kentucky's Statute of Frauds...............12

      D.    Even if the Master Agreement is Valid, the Consent-to-Jurisdiction Clause Is Unenforceable Under Applicable Federal Common Law................................14

      E.    The Individual Defendants are Not Subject to Personal Jurisdiction Regardless.........................................................................................................17

      F.    Venue in New York is Improper.......................................................................19

IV.   CONCLUSION...........................................................................................................20

# <u>TABLE OF AUTHORITIES</u>

**<u>Federal Cases</u>**                                                                    **<u>Page</u>**

<u>(888) Justice, Inc. v. Just Enterprises, Inc.</u>,
2007 WL 2398504, *5 (S.D.N.Y. 2007)........................................................................19

<u>Ackerley Media Group, Inc. v. Sharp Elecs. Corp.</u>,
170 F. Supp. 2d 445 (S.D.N.Y. 2001)........................................................................11

<u>Alderman v. Pan Am World Airways</u>,
169 F.3d 99 (2d Cir. 1999)........................................................................................11

<u>Astor Holdings, Inc. v. Roski</u>,
2002 WL 72936, *8 (S.D.N.Y. 2002)........................................................................19

<u>Bank of America, N.A. v. Hensley Properties, LP</u>,
495 F. Supp. 2d 435 (S.D.N.Y. 2007)........................................................................ 16

<u>Behr Systems, Inc. v. Envirometric Process Controls, Inc.</u>,
2000 WL 33975580, *3 (W.D. Ky. 2000) ..................................................................13

<u>Best Van Lines, Inc. v. Walker</u>,
490 F.3d 239 (2d Cir. 2007)......................................................................................10

<u>Beth Israel Med. Ctr. v. Horizon Blue Cross and Blue Shield of New Jersey, Inc.</u>,
448 F.3d 573 (2d Cir. 2006)......................................................................................11

<u>Bryant Park Capital v. Jelco Ventures</u>,
2005 WL 3466013, *1 (S.D.N.Y. 2005) ....................................................................19

<u>Cortec Indus. v. Sum Holding L.P.</u>,
949 F.2d 42 (2d Cir. 1991).........................................................................................9

<u>E.P.A. ex rel. McKeown v. Port Auth. of N.Y. and N.J.</u>,
162 F. Supp. 2d 173 (S.D.N.Y. 2001)........................................................................19

<u>Falik v. Smith</u>,
884 F. Supp. 862 (S.D.N.Y. 1995)............................................................................18

<u>Finance One Public Co. Ltd. v. Lehman Bros. Special Financing, Inc.</u>,
414 F.3d 325 (2d Cir. 2005)......................................................................................13

Global Network Communications, Inc. v. City of New York,
458 F.3d 150 (2d Cir. 2006)..........................................................................................9

Guy v. Layman,
932 F. Supp. 180 (E.D. Ky. 1996) ..............................................................................18

ICC Indus., Inc. v. Israel Discount Bank, Ltd.,
2005 WL 1844616, *5 (S.D.N.Y. 2005) ....................................................................17

International Shoe v. State of Washington,
326 U.S. 310 (1945)....................................................................................................18

Jones v. Weibrecht,
901 F.2d 17 (2d Cir. 1990)..........................................................................................15

Kerobo v. Southwestern Clean Fuels, Corp.,
285 F.3d 531 (6th Cir. 2002) ......................................................................................20

Klaxon Co. v. Stentor Elec. Mfg. Co.,
313 U.S. 487 (1941)....................................................................................................11

Lazard Freres & Co. v. Protective Life Ins. Co.,
108 F.3d 1531 (2d Cir. 1997)......................................................................................11

Lee v. Bankers Trust Co.,
166 F.3d 540 (2d Cir. 1999)........................................................................................11

M/S Bremen v. Zapata Off-Shore Co.,
407 U.S. 1 (1972)........................................................................................................17

Phillips v. Audio Active Ltd.,
494 F.3d 378 (2d Cir. 2007)........................................................................................15

PowerDsine, Inc. v. Broadcom Corp.,
2008 WL 268808, *6 (E.D.N.Y. 2008)......................................................................20

PT United Can Co. Ltd. v. Crown Cork & Seal Co., Inc.,
138 F.3d 65 (2d Cir. 1998)..........................................................................................19

Rainforest Café, Inc. v. EklecCo, L.L.C.,
340 F.3d 544 (8th Cir. 2003) ......................................................................................20

Rescuecom Corp. v. Chumley,
522 F. Supp. 2d 429 (N.D.N.Y. 2007) ........................................................................15

Rush v. Savchuk,
444 U.S. 320 (1980)..............................................................................................18

Saferstein v. Paul, Mardinly, Durham, James, Flandreau & Rodger, P.C.,
927 F. Supp. 731 (S.D.N.Y. 1996)........................................................................19

Sher v. Johnson,
911 F.2d 1357 (9th Cir. 1990) ...............................................................................18

**State Cases**

In re Allstate Ins. Co. (Stolarz),
81 N.Y.2d 219, 597 N.Y.S.2d 904, 613 N.E.2d 936 (N.Y. 1993)...............................11

Kentucky Utils. Co. v. Hurst Et. Ux.,
269 S.W. 525 (Ky. App. 1925) ..............................................................................13

Williamson v. Stafford,
190 S.W.2d 859 (Ky. App. 1945) ..........................................................................13

| **Rules, Statutes & Restatements** | **Page** |
|---|---|

28 U.S.C. §1391 ..................................................................................................19

FED. R. CIV. P. 12(b)(2), 12(b)(3), 12(b)(6) ........................................................6, 20

FED. R. CIV. P. 12(d) .............................................................................................9

KENTUCKY REVISED STATUTES ANNOTATED §371.010 ..........................................12

RESTATEMENT (SECOND) OF CONFLICT OF LAWS §188 ...........................................11

# I.  INTRODUCTION

The defendants have moved for dismissal of this action pursuant to Federal Rules of Civil Procedure 12(b)(2), (3), and (6) on the grounds that they are not subject to personal jurisdiction in New York, venue is improper in New York, and the Complaint fails to state a claim upon which relief may be granted.

None of the parties or events giving rise to this case has any relation to New York.  Plaintiff has nonetheless filed suit in New York for transparently tactical purposes. The Complaint alleges that the defendants consented to personal jurisdiction in New York, but the agreement upon which plaintiff relies is invalid under the applicable statute of frauds (Kentucky's) because none of the defendants signed or is a party to it.

Moreover, the "consent-to-jurisdiction clause" which plaintiff invokes is not enforceable under applicable federal law.  Even if the agreement and the consent-to-jurisdiction clause were otherwise valid, the clause covers only one of the defendants – the general partnership – not the individual defendants.  They are therefore not subject to the clause and there is no basis for subjecting them to personal jurisdiction in New York, which is an extremely distant and inconvenient forum.

Accordingly, the Court should dismiss this case.  Plaintiff can continue attempting to pursue its claims against the defendants in an action pending in federal court in Kentucky[1], which is where all the events giving rise to this dispute actually occurred and where all parties are indisputably subject to personal jurisdiction.

---

[1] The matter Ables & Hall Builders, et al. v. U.S. Bank National Association, Case No. 3:08-CV-00175, is currently pending in the U.S. District Court for the Western District of Kentucky (the "Kentucky Action"), and plaintiff has asserted a Counterclaim in that action which is substantively the same as its Complaint in this action.

## II. FACTS

Plaintiff, U.S. Bank National Association ("U.S. Bank"), has its principal place of business in Minnesota.  (*See* Declaration of Stephen G. Traflet (hereinafter "Traflet Decl.") at ¶2, Ex. 1 at ¶1.)  The defendants are a Kentucky general partnership and three Kentucky citizens and residents.  (*See* <u>id.</u> at ¶2, Ex. 1 at ¶¶2-5.)

In 2004, defendant Ables & Hall Builders, the general partnership, and other entities of which the individual defendants were owners or otherwise affiliated, had a borrowing relationship with U.S. Bank in connection with certain commercial and residential properties in Kentucky[2].  A U.S. Bank employee represented to them that he could provide more favorable terms by putting the defendants into fixed rate financing with no prepayment penalty.

The representations by the U.S. Bank employee led the defendants, who are unsophisticated borrowers, to believe that the refinancing proposal involved "swapping" a new fixed rate loan package with no prepayment penalty for their existing debt. Instead, U.S. Bank attempted to put Ables & Hall Builders into a much more complex interest rate swap arrangement that would to some extent mimic or provide the benefits of fixed-rate financing.[3]

On June 30, 2004, plaintiff faxed certain documents from its Louisville, Kentucky commercial real estate office (as evidenced by the 502 area code and "Comm Real Estate" designations on the fax legend at the top of the pages) to Ables & Hall Builders at

---

[2] Statements in this section of the Memorandum that are not otherwise attributed are contained in the Verified Complaint in the Kentucky Action and are provided here for purposes of balance and context although the Court need not accept them as true for purposes of the dismissal motion.

[3] A swap agreement is an arrangement in which parties agree to exchange cash flows ("swap") at certain intervals.  In a swap agreement transaction, the amounts on each side of the exchange are calculated by reference to agreed upon financial indices, such as interest rates.  Swap agreements commonly reflect an agreed exchange based on reference to a floating interest rate against a fixed interest rate.

its Louisville, Kentucky office.  Plaintiff instructed Ables & Hall Builders to "sign the ISDA Master Agreement and Schedule where indicated *by the parties specified in the Resolution* …."  (*See*  Declaration of Darlene Ables (hereinafter "Ables Decl.") at ¶2, Ex. 1 (June 29, 2004 Letter from Richard Todd of U.S. Bank to defendant Ables & Hall Builders).) (emphasis added).

*None* of the defendants signed or is otherwise a party to the Master Agreement. (It is no doubt for this reason that plaintiff did not attach a copy of the Master Agreement as an exhibit to the Complaint.)  While the three individual defendants are identified as partnership officers in, and are signatories of, the Resolution referred to in U.S. Bank's letter, that Resolution (a copy of which is attached to the Declaration of Darlene Ables as Exhibit 2) does not identify *anyone*, including any of them, as being authorized to execute documents like the Master Agreement, but only identifies the partners. Moreover, the Complaint contains no allegation that the non-party who did sign the Master Agreement, Darlene Ables, was either a partner in Ables & Hall Builders or its authorized agent for purposes of binding the defendants to the Master Agreement.

In 2007, the defendants and other related entities again advised U.S. Bank that they were considering alternative financing.  U.S. Bank advised that it could not match the terms of that alternative financing.  In connection with this refinancing, U.S. Bank again misled the defendants by providing payoff amounts to them that did not contain any reference to any claim that there would be any continuing liability on the interest rate swap arrangement.

Only well after the defendants and their related entities had made a non-refundable deposit to lock-in their new financing did U.S. Bank assert any claim that the

defendants were, by virtue of the interest rate swap arrangement, liable for a sum over and above the previously provided payoffs and provide payoffs which did refer to such a sum. These assertions were in stark contrast to the bank's prior assurances that there was no pre-payment penalty. U.S. Bank first advised that the sum claimed due was $190,000, but allowed it to grow to $456,188.52 before acting to fix its alleged damages at an amount certain.

U.S. Bank filed this action in the Supreme Court of the State of New York, County of New York, on February 5, 2008. The defendants removed the case to this Court.

The Complaint does not allege that any of the defendants has, or ever has had, *any* contacts with or physical presence in New York. The *only* basis plaintiff alleges for personal jurisdiction over the defendants in New York is that, "The parties consented to the jurisdiction of the State Courts of New York in the Master Agreement." (*See* Traflet Decl. at ¶2, Ex. 1 at ¶8.)

The Master Agreement is one of three documents that plaintiff alleges as evidence of the interest rate swap arrangement underlying plaintiff's two causes of action. (*See* Traflet Decl. at ¶2, Ex. 1 at ¶7.) A copy of the Master Agreement is attached to the Declaration of Darlene Ables as Exhibit 3, and a copy of the Schedule to the Master Agreement, which is also referred to in the Complaint, is attached to the Declaration of Darlene Ables as Exhibit 4.[4]

---

[4] Documents attached to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to the plaintiff's claim. Cortec Indus. v. Sum Holding L.P., 949 F.2d 42, 47-8 (2d Cir.1991). Thus, a court may consider such materials without converting the motion to dismiss into one for summary judgment as occurs when the court considers other extrinsic materials. Fed. R. Civ. P. 12(d); Global Network Communications, Inc. v. City of New York, 458 F.3d 150, 156 (2d Cir. 2006).

## III.  ARGUMENT

### A.      Summary of Defendants' Arguments

The burden lies with the party invoking the court's jurisdiction to establish the existence of that jurisdiction.  <u>Best Van Lines, Inc. v. Walker</u>, 490 F.3d 239, 242 (2d Cir. 2007).  Plaintiff premises personal jurisdiction over the defendants in New York *exclusively* upon the provisions of Section 11 of the Master Agreement (attached to the Declaration of Darlene Ables as Exhibit 3) and Part 3(e) of the Schedule to the Master Agreement (attached to the Declaration of Darlene Ables as Exhibit 4).

Therefore, to meet its burden plaintiff must establish first that the Master Agreement is a valid and enforceable contract.  If plaintiff is able to do this, it must next show that the clause in the Master Agreement upon which it premises personal jurisdiction over the defendants in New York is itself valid and enforceable.  If plaintiff is able to do this, it must finally show that the clause applies to the individual defendants as well as the defendant general partnership.

Only if it does all three of these things can plaintiff subject the defendants to personal jurisdiction and venue in what is, to them, a very distant court of New York for adjudication of a dispute which is otherwise wholly unrelated to that state.  Absent personal jurisdiction, plaintiff has not asserted an actionable claim.

**B.  Kentucky Law Applies to the Threshold Question of Whether the Master Agreement Satisfies the Statute of Frauds**

A federal court sitting in its diversity jurisdiction applies the substantive law, including choice of law rules, of the forum state.  Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496 (1941); Lee v. Bankers Trust Co., 166 F.3d 540, 545 (2d Cir. 1999).

"Under New York's choice-of-law rules, the interpretation and validity of a contract is governed by the law of the jurisdiction which is the 'center of gravity' of the transaction."  Alderman v. Pan Am World Airways, 169 F.3d 99, 103 (2d Cir. 1999) (citing Lazard Freres & Co. v. Protective Life Ins. Co., 108 F.3d 1531, 1539-40 (2d Cir. 1997)); Ackerley Media Group, Inc. v. Sharp Elecs. Corp., 170 F. Supp. 2d 445, 450 (S.D.N.Y. 2001).

In such "center of gravity" or "grouping of contacts" analysis, the court considers factors including the place of contracting, negotiation and performance; the location of the subject matter of the contract; and the domicile of the contracting parties.  Beth Israel Med. Ctr. v. Horizon Blue Cross and Blue Shield of New Jersey, Inc., 448 F.3d 573, 583 (2d Cir. 2006) (citing In re Allstate Ins. Co. (Stolarz), 81 N.Y.2d 219, 223, 597 N.Y.S.2d 904, 613 N.E.2d 936 (N.Y. 1993)); *see also* RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 188 (1971).

These factors conclusively dictate the application of Kentucky's statute of frauds to the threshold issue of determining the validity of the Master Agreement here. Kentucky was indisputably the place of the alleged contracting, negotiation and performance of the Master Agreement.  A representative of plaintiff in Kentucky dealt with the defendants in Kentucky.  Plaintiffs do not, and indeed cannot, allege that

*anything* associated with the alleged contracting, negotiation and performance of the Master Agreement happened in New York.

Kentucky is also the location of the subject matter of the alleged contract. The Master Agreement allegedly arises from and relates to borrowing by Kentucky defendants. Plaintiff sent documents from its Kentucky commercial real estate office to defendant Ables & Hall Builders at its Louisville address. Again, plaintiff alleges *nothing* that would put the location of the subject matter of the alleged agreement in New York instead of Kentucky.

Finally, all the defendants are domiciled in Kentucky. (*See* Traflet Decl. at ¶2, Ex. 1 at ¶¶2-5.) Plaintiff is headquartered in Minnesota and transacted this business in Kentucky. (*See* Traflet Decl. at ¶2, Ex. 1 at ¶1.) Aside from the alleged consent to jurisdiction clause, the Complaint is devoid of any substantive averments connecting any of the parties to New York.

Under applicable New York "center of gravity" choice of law analysis, the law of Kentucky applies to the threshold question of whether the Master Agreement is valid and enforceable for purposes of the consent to jurisdiction clause upon which plaintiff places its exclusive reliance for hailing the defendants into the courts of New York.

### C.    The Master Agreement Fails to Satisfy Kentucky's Statute of Frauds

Under the Kentucky statute of frauds, a contract must be in writing *"and signed by the party to be charged therewith, or by his authorized agent"* to be enforceable if it will not be performed within one year of its making. KY. REV. STAT. ANN. §371.010(7) (a copy of which is attached to the Declaration of Stephen G. Traflet at Exhibit 2).

(emphasis added). Even if it is possible that a contract may be performed within a year, Kentucky law provides that the statute of frauds still applies if the parties do not anticipate or contemplate performance to be completed within a year. <u>Williamson v. Stafford</u>, 190 S.W.2d 859, 860 (Ky. App. 1945); <u>Kentucky Utils. Co. v. Hurst Et. Ux.</u>, 269 S.W. 525 (Ky. App. 1925); <u>Behr Sys., Inc. v. Envirometric Process Controls, Inc.</u>, 2000 WL 33975580, at *3 (W.D. Ky. 2000).

The Master Agreement is a form document.[5] This one is dated as of June 29, 2004, but the plaintiff is seeking to enforce it almost four years later. It is therefore obvious that plaintiff neither anticipated nor contemplated that performance of the Master Agreement would be completed within a year. Plaintiff also pleads a provision of the Master Agreement expressly demonstrating its anticipation and contemplation that the agreement would continue in force for as long as "July 1, 2014." (*See* Traflet Decl. at ¶2, Ex. 1 at ¶9.) The Master Agreement therefore comes within the scope of Kentucky's statute of frauds for purposes of the enforceability of the consent-to-jurisdiction clause upon which plaintiff relies.

However, the Master Agreement is *not* signed by any of the parties to this action whom plaintiff seeks to charge with it. The *only* name appearing on the Master Agreement for Ables & Hall Builders is that of "Darlene Ables." Her "title" is shown as "Bookkeeper/Owner," not "partner" or "authorized agent," and neither her name nor signature appear on the Resolution plaintiff provided to Ables & Hall Builders and said it had to have to identify authorized signatories. Plaintiff has not pled, and cannot prove by

---

[5] The International Swaps and Derivatives Association ("ISDA"), the principal industry association of the derivatives industry, publishes a standard form contract known as the "Master Agreement," which is generally used in connection with derivative transactions. <u>Finance One Public Co. Ltd. v. Lehman Bros. Special Financing, Inc.</u>, 414 F.3d 325, 327-28 (2d Cir. 2005).

any signed authorization, resolution, or otherwise, that Ms. Ables was a partner or authorized agent of any of the defendants for purposes of the Master Agreement.

Because its performance was not contemplated to be complete within one year, and it is not signed by a party to be charged or an authorized agent thereof, the Master Agreement, and hence the consent to jurisdiction clause in it, is invalid and unenforceable under Kentucky's statute of frauds. This Court should therefore dismiss this action for lack of personal jurisdiction.

### D. Even if the Master Agreement is Valid, the Consent-to-Jurisdiction Clause is Unenforceable Under Applicable Federal Common Law

The provisions upon which plaintiff places exclusive reliance for personal jurisdiction over the defendants in New York read, in their entirety, as follows:

Section 11 of the Master Agreement

(b) ***Jurisdiction.*** With respect to any suit, action or proceedings relating to this Agreement ("Proceedings"), each party irrevocably:

(i)     submits to the jurisdiction of the English courts, if this Agreement is expressed to be governed by English law, or to the non-exclusive jurisdiction of the courts of the State of New York and the United States District Court located in the Borough of Manhattan in New York City, if this Agreement is expressed to be governed by the laws of the State of New York; and

(ii)     waives any objection which it may have at any time to the laying of venue of any Proceedings brought in any such court, waives any claim that such Proceedings have been brought in an inconvenient forum and further waives the right to object, with respect to such Proceedings, that such court does not have any jurisdiction over such party.

Nothing in this Agreement precludes either party from bringing Proceedings in any other jurisdiction (outside, if this Agreement is expressed to be governed by English law, the Contracting States, as defined in Section 1(3) of the Civil Jurisdiction and Judgments Act 1982

or any modification, extension or re-enactment thereof for the time being in force) nor will the bringing of Proceedings in any one or more jurisdiction preclude the bringing of Proceedings in any other jurisdiction.

Part 3(e) of the Schedule to the Master Agreement

(e)     ***Governing Law.***  This Agreement will be governed by and construed in accordance with the laws of the state of New York (without reference to choice of law doctrine).

"[T]he legal standard governing consent-to-jurisdiction clauses is the same as the legal standard governing forum-selection clauses."  Rescuecom Corp. v. Chumley, 522 F. Supp. 2d 429, 444 (N.D.N.Y. 2007).  When adjudicating diversity cases, federal courts apply federal law to determine the enforceability of a contractual forum selection clause. Jones v. Weibrecht, 901 F.2d 17, 19 (2d Cir. 1990).

The U. S. Court of Appeals for the Second Circuit has recently set forth a four-part analytical framework for determining whether to enforce such clauses.  It is:

1.     Was the clause reasonably communicated to the party resisting enforcement?

2.     Is the clause as mandatory or permissive, *i.e.*, are the parties are required to bring any dispute to the designated forum or simply permitted to do so?

3.     Are the claims and parties involved in the suit subject to the forum selection clause?

4.     If *each* of these three questions is answered in the affirmative, the clause is presumptively enforceable, and the resisting party must make a sufficiently strong showing that enforcement would be unreasonable or unjust, or that the clause was invalid for such reasons as fraud or overreaching.

Phillips v. Audio Active Ltd., 494 F.3d 378, 383-84 (2d Cir. 2007).

Here, there is no basis for concluding that the clause was reasonably communicated to the defendants since *none* of them signed or otherwise acknowledged the document containing the clause. The clause is clearly permissive since it refers only to the "non-exclusive jurisdiction of the courts of the State of New York" and provides that, "Nothing in this Agreement precludes either party from bringing Proceedings in any other jurisdiction … nor will the bringing of Proceedings in any one or more jurisdictions preclude the bringing of Proceedings in any other jurisdiction."

While the claims involved in the suit may be subject to the clause, there is simply no basis upon which the Court can conclude that the parties to the suit are subject to it since none of them signed or otherwise acknowledged the document containing the clause. It would also be unreasonable and unjust to enforce the consent-to-jurisdiction clause against the defendants in this case.

In a recent and factually similar situation, Judge Marrero of this Court refused to enforce the same New York consent-to-jurisdiction clause in the same ISDA Master Agreement form contract that is involved in this action when, as here, the party against whom enforcement was sought did not sign the Master Agreement and "neither the parties nor the events and transactions at issue have any connection with New York." Bank of America, N.A. v. Hensley Properties, LP, 495 F. Supp. 2d 435, 439 (S.D.N.Y. 2007). Finding that enforcement would be unreasonable and unjust and that the totality of circumstances "weigh compellingly in favor of conducting this litigation in the Eastern District of California" (the place where the defendant was located and the events related to the alleged swap transaction took place), he transferred that case there.

Since plaintiff cannot satisfy the elements of the applicable test, the clause is not presumptively enforceable. Even if plaintiff could satisfy these elements, however, the clause would still be "unreasonable under the circumstances" and therefore unenforceable against the defendants here. M/S Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 10 (1972). Trial in New York will be so difficult, expensive, and inconvenient for the defendants, all of whom are domiciled in Kentucky, that they will effectively be deprived of their day in court.[6]

Thus, even if the Master Agreement were valid under the Kentucky statute of frauds, the consent-to-jurisdiction clause upon which plaintiffs rely is not enforceable under the controlling federal law as set forth by the Second Circuit. Dismissal is required for this reason as well.

### E.     The Individual Defendants are Not Subject to Personal Jurisdiction Regardless

Even if the Master Agreement is valid under the Kentucky statute of frauds *and* the consent-to-jurisdiction clause is enforceable under federal common law, that clause provides jurisdiction *only* over defendant Ables & Hall Builders, a Kentucky general partnership, and not over the individual defendants. Since none of the individual defendants are parties to the Master Agreement or signed it, plaintiff evidently contends that if the Ables & Hall Builders partnership is subject to personal jurisdiction in New York by virtue of the consent-to-jurisdiction clause then the individual partners are also subject to personal jurisdiction in New York.

---

[6] Even a court with proper jurisdiction and venue over a matter may refrain from hearing the case if another significantly more appropriate forum exists, as is the case with Kentucky here. ICC Indus., Inc. v. Israel Discount Bank, Ltd., 2005 WL 1844616, at *5 (S.D.N.Y. 2005).

However, a court does not acquire jurisdiction over individual partners by virtue of having jurisdiction over a partnership. Jurisdiction must be established over each partner by considering the contacts of the partner with the forum state. Falik v. Smith, 884 F. Supp. 862, 866 (S.D.N.Y. 1995). *See also* Guy v. Layman, 932 F. Supp. 180 (E.D. Ky. 1996); Sher v. Johnson, 911 F.2d 1357, 1365-66 (9th Cir. 1990). These cases, and others, stand for the proposition that personal jurisdiction depends only upon each defendant's relationship with the forum, and regardless of any potential joint liability, jurisdiction over each defendant must be established individually. Rush v. Savchuk, 444 U.S. 320 (1980)

Thus, regardless of how the Court rules on the validity of the Master Agreement or the enforceability of the consent-to-jurisdiction clause as to Ables & Hall Builders general partnership, plaintiff simply cannot meet its burden of showing contacts by the individual defendants with New York constitutionally sufficient to support personal jurisdiction over them there. International Shoe v. State of Washington, 326 U.S. 310 (1945). Accordingly, the Court should dismiss the individual defendants from this action.

**F.        Venue in New York is Improper**

The Court should also, or alternatively, dismiss this action because of improper venue as to the underlying state court action.  PT United Can Co. Ltd. v. Crown Cork & Seal Co., Inc., 138 F.3d 65, 72 (2d Cir. 1998).  "A defendant who has removed a case may still challenge the propriety of venue in the state court from which the case was removed."  Bryant Park Capital v. Jelco Ventures, 2005 WL 3466013, at *1 (S.D.N.Y. 2005).  Put differently, the federal venue statute, 28 U.S.C. § 1391, does not control the propriety of venue in a state court case that is removed to federal court.

On a motion to dismiss for improper venue, the plaintiff bears the burden of demonstrating proper venue.  E.P.A. ex rel. McKeown v. Port Auth. of N.Y. and N.J., 162 F. Supp. 2d 173, 183 (S.D.N.Y. 2001); (888) Justice, Inc. v. Just Enters., Inc., 2007 WL 2398504, at *5 (S.D.N.Y. 2007).  Where, as here, a case involves more than one defendant, or more than one claim against a defendant, venue must be proper as to each defendant and as to each claim.  Astor Holdings, Inc. v. Roski, 2002 WL 72936, at *8 (S.D.N.Y. 2002).  Thus, in cases like this one involving multiple claims, proper venue must be established with respect to each cause of action asserted.  Saferstein v. Paul, Mardinly, Durham, James, Flandreau & Rodger, P.C., 927 F. Supp. 731, 736 (S.D.N.Y. 1996).  Plaintiff cannot meet this burden, especially as to the individual defendants.

The Complaint does not contain a separate allegation as to venue.  There are no allegations in the Complaint that would support venue in New York by virtue of the residency or acts of any of the defendants.  Plaintiff apparently relies on Section 11(b) of the Master Agreement and Part 3(e) of the Schedule for venue just as it does for personal jurisdiction.  However, as demonstrated above in connection with personal jurisdiction,

these provisions are an insufficient basis for venue in New York as against any of the defendants since the Master Agreement is invalid under the applicable statute of frauds as demonstrated above.

Even if the Master Agreement was valid and supported New York venue as to Ables & Hall Builders, however, the individual defendants are not parties to it and have not in any way, shape, or form waived their objections to venue. Their motion to dismiss for improper venue must therefore be considered on its merits regardless. PowerDsine, Inc. v. Broadcom Corp., 2008 WL 268808, at *6 (E.D.N.Y. 2008). And, again, there are no allegations in the Complaint that would support venue in New York by virtue of the residency or acts of any of the individual defendants. Since Count II of the Complaint relates only to the individual defendants, plaintiff plainly cannot meet its burden of establishing venue as to each defendant and claim.

Whether it does so under Rule 12(b)(3) or 12(b)(6)[7], the Court should dismiss this action for improper venue.

## IV.  CONCLUSION

As demonstrated above, the defendants are not subject to personal jurisdiction in New York, venue is improper in New York, and the complaint fails to state a claim upon which relief may be granted. No party or conduct in this action has any relation to New York. It is especially clear that there is no basis for personal jurisdiction or venue over the individual defendants in New York, and this alone compels dismissal. Kentucky is

---

[7]  Because there is some dispute as to whether Rule 12(b)(3) or Rule 12(b)(6) is the proper vehicle for bringing a motion to dismiss based on improper venue when the issue turns to some extent on a forum selection clause, the defendants move here pursuant to both. See Kerobo v. Southwestern Clean Fuels, Corp., 285 F.3d 531, 534-36 (6th Cir. 2002); Rainforest Cafe, Inc. v. EklecCo, L.L.C., 340 F.3d 544, 546 (8th Cir. 2003).

the correct place for adjudication of this dispute since all the events giving rise to it took place there and all parties are subject to personal jurisdiction there.  Accordingly, the Court should grant defendants' motion and dismiss this action.

Dated: Morristown, New Jersey
     April 22, 2008

/s/ Stephen G. Traflet
Stephen G. Traflet (ST-9654)
TRAFLET & FABIAN
1001 Avenue of the Americas
11th Floor
New York, NY  10018
Tel:     212.244.6199

264 South Street
Morristown, NJ  07960
Tel:     973.631.6222
straflet@trafletfabian.com


John David Dyche
Fultz Maddox Hovious & Dickens PLC
2700 National City Tower
101 South Fifth Street
Louisville, KY  40202-3116
Tel:     502.588.2017 (Direct Dial)
jddyche@fmhd.com

Attorneys for Defendants
Ables & Hall Builders, Ronnie Ables,
Dennis Wade Ables and James A. Hall

<u>CERTIFICATE OF SERVICE</u>

The undersigned, an attorney duly admitted to practice law before this Court, hereby certifies under penalty of perjury that onApril 22, 2008, I caused a true copy of the Notice of Motion to Dismiss Plaintiff's Complaint, Declaration of Stephen G. Traflet in Support of the Motion to Dismiss Plaintiff's Complaint executed onApril 22, 2008 with the exhibits annexed thereto; the Declaration of Darlene Ables dated April 21, 2008 and the exhibits thereto; and the Memorandum of Law in Support of Defendants' Motion to Dismiss Plaintiff's Complaint to be served upon the following by First Class Mail, postage-prepaid:

       Moshe Sasson, Esq.
       Sasson Blaivas LLP
       488 Madison Avenue
       18th Floor
       New York, NY 10022
       Tel:    212.949.7500

       Jacob E. Miota, Esq.
       Michael Best & Friedrich LLP
       100 East Wisconsin Avenue
       Suite 3300
       Milwaukee, WI 53202-4108
       Tel:    414.271.6560

Dated: Morristown, New Jersey
       April 22, 2008

                                    /s/ Stephen G. Traflet
                                    STEPHEN G. TRAFLET