Stephen G. Traflet
TRAFLET & FABIAN
1001 Avenue of the Americas
11th Floor
New York, NY 10018
(212) 244-6199
straflet@trafletfabian.com

Attorneys for Defendants
Ables & Hall Builders, Ronnie Ables,
Dennis Wade Ables and James A. Hall

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

| | |
|---|---|
| U.S. BANK NATIONAL ASSOCIATION, | |
| Plaintiff, | Civil Action No.: 08cv2540(DC) |
| vs. | |
| ABLES & HALL BUILDERS, a Kentucky General Partnership; RONNIE ABLES, DENNIS WADE ABLES and JAMES A. HALL, its General Partners, | ECF CASE |
| Defendants. | |

---

### DECLARATION OF STEPHEN G. TRAFLET IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S COMPLAINT

I, STEPHEN G. TRAFLET, pursuant to 28 U.S.C. §1746, hereby declare as follows:

1. I am an attorney-at-law of the State of New York, and the United States District Court for the Southern District of New York, and am a partner in the firm of Traflet & Fabian, attorneys for Defendants ABLES & HALL BUILDERS, RONNIE ABLES, DENNIS WADE ABLES and JAMES A. HALL. I make this Declaration in

1

support of Defendants' Motion to Dismiss Plaintiff's Complaint. I make this Declaration based on my own personal knowledge.

2. Attached hereto as **Exhibit 1** is a true and correct copy of plaintiff's Complaint against defendants filed in the Supreme Court of the State of New York, New York County.

3. Attached hereto as **Exhibit 2** is a true and correct copy of Kentucky Revised Statute Annotated §371.010.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed on April 22, 2008 at Morristown, New Jersey.

/s/ Stephen G. Traflet
STEPHEN G. TRAFLET

## CERTIFICATE OF SERVICE

The undersigned, an attorney duly admitted to practice law before this Court, hereby certifies under penalty of perjury that on April 22, 2008, I caused a true copy of the Notice of Motion to Dismiss Plaintiff's Complaint, Declaration of Stephen G. Traflet in Support of the Motion to Dismiss Plaintiff's Complaint executed on April 22, 2008 with the exhibits annexed thereto; the Declaration of Darlene Ables dated April 21, 2008, and the exhibits thereto; and the Memorandum of Law in Support of Defendants' Motion to Dismiss Plaintiff's Complaint to be served upon the following by First Class Mail, postage-prepaid:

> Moshe Sasson, Esq.
> Sasson Blaivas LLP
> 488 Madison Avenue
> 18th Floor
> New York, NY  10022
> Tel:   212.949.7500
>
> Jacob E. Miota, Esq.
> Michael Best & Friedrich LLP
> 100 East Wisconsin Avenue
> Suite 3300
> Milwaukee, WI  53202-4108
> Tel:   414.271.6560

Dated: Morristown, New Jersey
April 22, 2008

/s/ Stephen G. Traflet
STEPHEN G. TRAFLET

# EXHIBIT 1

SUPREME COURT OF THE STATE OF NEW YORK,
COUNTY OF NEW YORK
---------------------------------------x
U.S. BANK NATIONAL ASSOCIATION

        Plaintiff,

vs.

ABLES & HALL BUILDERS, a Kentucky
General Partnership; RONNIE ABLES,
DENNIS WADE ABLES, and JAMES A. HALL,
its General Partners,

        Defendants.
---------------------------------------x

Index No.: 600342/08

Filing Date: 2/5/08

**SUMMONS**

The basis of venue in New York
County is CPLR 503(a)

NEW YORK
COUNTY CLERK'S OFFICE

FEB 05 2008

NOT COMPARED
WITH COPY FILE

TO: ABLES & HALL BUILDERS
7919 ARNOLDTOWN ROAD
LOUISVILLE, KY 40214

RONNIE ABLES
7919 ARNOLDTOWN ROAD
LOUISVILLE, KY 40214

DENNIS WADE ABLES
7919 ARNOLDTOWN ROAD
LOUISVILLE, KY 40214

JAMES A. HALL,
7919 ARNOLDTOWN ROAD
LOUISVILLE, KY 40214

YOU ARE HEREBY SUMMONED to answer the complaint in this action and to serve a copy of your answer, or, if the complaint is not served with this summons, to serve a notice of appearance, on the Plaintiff's Attorneys within twenty (20) days after the service of this summons, exclusive of the day of service (or within thirty (30) days after the service is complete if this summons is not personally delivered to you within the

State of New York); and in case of your failure to appear or answer, judgment will be taken against you by default for the relief demanded in the complaint.

Dated:   New York, New York
         February 5, 2008

                              SASSON BLAIVAS LLP

                              By: Moshe Sasson, Esq.
                              Attorneys for Plaintiff
                              488 Madison Avenue, 18th Floor
                              New York, New York 10022
                              (212) 949-7500

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

------------------------------------------------------------x
U.S. BANK NATIONAL ASSOCIATION,                Index No.: 600342/08

        Plaintiff,                                      **COMPLAINT**

vs.

ABLES & HALL BUILDERS, a Kentucky
General Partnership; RONNIE ABLES,
DENNIS WADE ABLES, and JAMES A. HALL,
its General Partners,

        Defendants.
------------------------------------------------------------x

NEW YORK
COUNTY CLERKS OFFICE
FEB 05 2008
NOT COMPARED
WITH COPY FILE

      Plaintiff U.S. Bank National Association (the "Bank"), by its attorneys, Michael Best & Friedrich LLP and Sasson Blaivas LLP, as and for its Complaint against Defendants Ables & Hall Builders (the "Borrower") and its General Partners listed herein alleges and shows to the Court as follows:

## PARTIES

     1.    U.S. Bank National Association (the "Bank") is a bank organized under the laws of the United States with its headquarters in Minneapolis, Minnesota.

     2.    Ables & Hall Builders, upon information and belief, is a Kentucky General Partnership organized under the laws of Kentucky.

     3.    Mr. Ronnie Ables, upon information and belief, is an adult resident and citizen of Kentucky and is one of the General Partners of Ables & Hall Builders.

     4.    Mr. Dennis Wade Ables, upon information and belief, is an adult resident and citizen of Kentucky and is one of the General Partners of Ables & Hall Builders.

     5.    Mr. James A. Hall, upon information and belief, is an adult resident and citizen of Kentucky and is one of the General Partners of Ables & Hall Builders.

## FACTS

6. In 2004, the Borrower and the Bank entered into an interest rate swap transaction. In this interest rate swap transaction, the Borrower agreed to pay the Bank a monthly fixed rate of 5.07%, adding a credit spread of 2.25% on the underlying loans, for an effective rate of 7.32% per annum based upon a notional amount of $7,893,000.00. In return, the Bank agreed to pay the Borrower monthly payments at a floating, or variable, rate of the U.S. Dollar LIBOR interest rate based upon a notional amount of $7,893,000.00.

7. The terms of the parties' mutual obligations in the interest rate swap transaction were evidenced by three documents. The first is entitled the "ISDA Master Agreement," dated June 29, 2004 ("Master Agreement") and is a standard agreement issued by International Swap Dealers Association Incorporated ("ISDA") and which is one of a series of similar forms published by the ISDA which governs almost all interest rate swap transactions in the United States. The second is entitled "Schedule to the Master Agreement" ("Schedule") dated June 29, 2004 and relates to and modifies the Master Agreement. The third is a "Confirmation" dated November 5, 2004 from the Bank to the Borrower reiterating the financial terms and procedures in the interest rate swap transaction.

8. Pursuant to Section 11(b) of the Master Agreement and Part 3(e) of the Schedule, the interest rate swap transaction is governed by the laws of New York. The parties consented to the jurisdiction of the State Courts of New York in the Master Agreement.

9. The interest rate swap transaction had a number of benefits for the Borrower. For example, by entering into the interest rate swap transaction, the Borrower was able to reduce its effective interest rate on $7,893,000.00 of debt from 7.70% to 7.32%. Under the interest rate swap transaction, if the LIBOR rate for any month was higher than 5.07%, the Bank would pay

This fax was received by GFI FAXmaker fax server. For more information, visit http://www.gfi.com

the Borrower the difference in the interest rate. On the other hand, if the LIBOR rate was lower than 5.07% for any given month, the Borrower would pay the Bank. From July 2006 to November 2007, the LIBOR rate was higher than 5.07% and the Borrower therefore collected some $25,749.00 in monthly payments from the Bank. Conversely, since November of 2007, the LIBOR rate has dropped below 5.07% and the Borrower owed money to the Bank for those months. The parties agreed that if the interest rate swap transaction was terminated prior to July 1, 2014 for any reason, the interest rate swap would be "marked-to-market" and the Borrower would be a payor or a payee of the Bank, depending upon the prevailing market swap rates. By entering into the transaction, the Borrower also avoided a $59,564.00 prepayment premium which would have been due on its then fixed rate loan.

10. On January 24, 2008, the Borrower triggered an Additional Termination Event when it refinanced its underlying indebtedness to the Bank with another financial institution. Part 1(g) of the Schedule in Section 6(b)(iii)(2) of the Master Agreement provides that "as to [the Borrower] an Additional Termination Event shall occur upon termination of any agreement between [the Bank] and [the Borrower]."

11. After the above-described Additional Termination Event occurred, the Bank, pursuant to Section 6(b)(iii) of the Master Agreement, notified the Borrower and designated an early termination date of January 31, 2008. Upon termination of the interest rate swap transaction, the Bank determined a Settlement Amount of $456,188.52 owed to the Bank under Section 6(e) of the Master Agreement. Under Section 6(d)(ii) of the Master Agreement, the Borrower's payment of this amount was due two (2) business days after the date of the notice, or by February 4, 2008. However, as of the date of this Complaint, the Borrower has not paid the money owed to the Bank.

- 3 -

12. Pursuant to Section 6(d)(ii) of the Master Agreement, the Bank is entitled to charge interest on the money due it from the Borrower at a rate equal to the Bank's cost of funds plus 1%. Pursuant to Section 9 of the Master Agreement, the Bank also is entitled to its costs of collection, including attorneys' fees, if the Borrower does not pay.

### FIRST CAUSE OF ACTION
### (Breach Of Contract -- Borrower)

13. The Bank hereby realleges and incorporates Paragraphs 1 through 12 of the Complaint as if fully set forth herein.

14. The Borrower triggered an Additional Termination Event pursuant to Part 1(g) of the Schedule under the interest rate swap transaction when it refinanced its underlying obligations with a different financial institution.

15. Section 6(e) of the Master Agreement provides a method for calculating the Bank's damages resulting from the Borrower's breach. Pursuant to those calculations, and as a result of the Borrower's breach, the Borrower owes the Bank $456,188.52, calculated pursuant to Section 6(e) of the Master Agreement, plus interest and attorneys' fees in collecting this money.

### SECOND CAUSE OF ACTION
### (Breach Of Contract -- General Partners)

16. The Bank hereby realleges and incorporates Paragraphs 1 through 15 of the Complaint as if fully set forth herein.

17. The General Partners are jointly and severally liable for the debts and obligations of the Borrower pursuant to Kentucky partnership law, K.R.S. §§ 362.010 *et seq.* Therefore, they each are jointly and severally liable to the Bank for the marked-to-market swap value.

- 4 -

This fax was received by GFI FAXmaker fax server. For more information, visit http://www.gfi.com

WHEREFORE, Plaintiff U.S. Bank National Association demands judgment against Defendants, jointly and severally, in the amount of $456,188.52, plus contractual interest, attorneys' fees and costs and disbursements of this action, together with such further and additional relief as this Court deems just and proper.

Dated:  New York, New York
        February 5, 2008

                            SASSON BLAIVAS LLP
                            Attorneys for Plaintiff U.S. Bank National
                            Association

                            By: _____
                            Moshe Sasson, Esq.
                            488 Madison Avenue, 18th Floor
                            New York, New York 10022
                            Phone (212) 949-7500

**OF COUNSEL:**

Michael Best & Friedrich LLP
Jacob E. Miota, Esq.
100 East Wisconsin Avenue
Suite 3300
Milwaukee, Wisconsin 53202-4108
Phone (414) 271-6560

This fax was received by GFI FAXmaker fax server. For more information, visit: http://www.gfi.com

Index No. _____

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
---------------------------------------------------------X
U.S. BANK NATIONAL ASSOCIATION,

        Plaintiff,

vs.

ABLES & HALL BUILDERS, a Kentucky
General Partnership; RONNIE ABLES,
DENNIS WADE ABLES, and JAMES A. HALL,
its General Partners,

        Defendants.

---------------------------------------------------------X

---

## SUMMONS AND COMPLAINT

---

SASSON BLAIVAS LLP
*Attorneys for Plaintiff*
488 Madison, 18th Floor
New York, New York 10022
212-949-7500

This fax was received by GFI FAXmaker fax server. For more information, visit: http://www.gfi.com

# EXHIBIT 2

**371.010 Statute of frauds -- Contracts to be written.**

No action shall be brought to charge any person:

(1) For any representation or assurance concerning the character, conduct, credit, ability, trade, or dealings of another, made with intent that such other may obtain thereby credit, money, or goods;

(2) Upon any promise to pay a debt contracted during infancy, or any ratification of a contract or promise made during infancy;

(3) Upon any promise of a personal representative as such to answer any liability of his decedent out of his own estate;

(4) Upon any promise to answer for the debt, default, or misdoing of another;

(5) Upon any agreement made in consideration of marriage, except mutual promises to marry;

(6) Upon any contract for the sale of real estate, or any lease thereof for longer than one year;

(7) Upon any agreement that is not to be performed within one year from the making thereof;

(8) Upon any promise, agreement, or contract for any commission or compensation for the sale or lease of any real estate or for assisting another in the sale or lease of any real estate; or

(9) Upon any promise, contract, agreement, undertaking, or commitment to loan money, to grant, extend, or renew credit, or make any financial accommodation to establish or assist a business enterprise or an existing business enterprise including, but not limited to the purchase of realty or real property, but this subsection shall not apply to agreements pursuant to which credit is extended by means of a credit card or similar device, or to consumer credit transactions;

unless the promise, contract, agreement, representation, assurance, or ratification, or some memorandum or note thereof, be in writing and signed by the party to be charged therewith, or by his authorized agent. It shall not be necessary to express the consideration in the writing, but it may be proved when necessary or disproved by parol or other evidence.

**Effective:** July 13, 1990

**History:** Amended 1990 Ky. Acts ch. 259, sec. 1, effective July 13, 1990. -- Amended 1950 Ky. Acts ch. 174, sec. 1. -- Recodified 1942 Ky. Acts ch. 208, sec. 1, effective October 1, 1942, from Ky. Stat. sec. 470.