# TABLE OF CONTENTS

I.     INTRODUCTION............................................................................................. 1

II.    FACTS ........................................................................................................... 2

III.   ARGUMENT .................................................................................................. 5

       A.   Legal Standard ...................................................................................... 6

       B.   The Interest Rate Swap Transaction Agreements are not Void under the
            Statute of Frauds .................................................................................. 7

            1.   New York Law Governs This Issue................................................ 7

            2.   Defendants' Attacks on the Validity of the Interest Rate Swap
                 Transaction Agreements Cannot be Resolved on a Motion To
                 Dismiss..................................................................................... 8

            3.   The Interest Rate Swap Transaction Agreements are Valid and
                 were Ratified by Defendants........................................................ 9

       C.   This Court has Personal Jurisdiction over Ables & Hall and its General
            Partners ............................................................................................. 10

            1.   New York Statutory Law Gives this Court Jurisdiction over
                 Defendants .............................................................................. 10

            2.   Even if the New York Statute does not Apply, Defendants' Motion
                 Still Fails ............................................................................... 11

       D.   This Court has Jurisdiction over the General Partners Because it has
            Jurisdiction over the Partnership......................................................... 16

       E.   Venue is proper in New York .............................................................. 18

IV.    CONCLUSION ............................................................................................. 18

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Alland v. Consumers Credit Corp.*,
    476 F.2d 951 (2d Cir. 1973).......................................................................14

*Bank of America, N.A. v. Hensley Properties, LP*,
    495 F. Supp. 2d 435 (S.D.N.Y. 2007).........................................................15

*Bell Atl. Corp. v. Twombly*,
    -- U.S. --, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)..................................6

*Bernheim v. Litt*,
    79 F.3d 318 (2d Cir. 1996).......................................................................6, 8

*Brass v. Am. Film Techs., Inc.*,
    987 F.2d 142 (2d Cir.1993).........................................................................6

*D.H. Blaire & Co., Inc. v. Gottdeiner*,
    462 F.3d 95 (2d Cir. 2006).........................................................................10

*DiBella v. Hopkins*,
    187 F. Supp. 2d 192 (S.D.N.Y. 2002)...........................................................7

*Falik v. Smith*,
    884 F. Supp. 862 (S.D.N.Y. 1995).............................................................17

*Guy v. Layman*,
    932 F. Supp. 180 (E.D. Ky. 1996*)* .........................................................17

*Ins. Corp. of Ireland v. Compagnie des Bauxites de Guinee*,
    456 U.S. 694, 102 S. Ct. 2099, 72 L. Ed. 2d 492 (1982)............................11

*Iqbal v. Hasty*,
    490 F.3d 143 (2d Cir. 2007).........................................................................6

*Kernan v. Kurz-Hastings, Inc.*,
    175 F.3d 236 (2d Cir. 1999).........................................................................7

*M/S Bremen v . Zapata Off-Shore Co.*,
   401 U.S. 1 (1972)...............................................................................12, 13

*Nat'l Equip. Rental, Ltd. v. Szukhent*,
   *375* U.S. *311, 84* S. Ct. *411, 11* L. Ed. 2d *354 (1964)*.................................11

*Patane v. Clark*,
   508 F.3d 106 (2d Cir. 2007)..........................................................................6

*Phillips v. Audio Active, Ltd.*,
   494 F.3d 378 (2d Cir. 2007).................................................12, 13, 14, 16

*Prentice v. Apfel*,
   11 F. Supp. 2d 420 (S.D.N.Y.1998)..........................................................2, 6

*Rescuecom Corp. v. Chumley*,
   522 F. Supp. 2d 429 (N.D.N.Y. 2007).........................................................12

*Sher v. Johnson*,
   911 F.2d 1357 (9th Cir. 1990) .....................................................................17

*Wall v. CSX Transp., Inc.*,
   471 F.3d 410 (2d Cir. 2006)...........................................................................8

*Wichita Fed. Sav. And Loan Assoc. v. Comark*,
   586 F. Supp. 940 (S.D.N.Y. 1984)........................................................17, 18

## STATE CASES

*Afloat in France, Inc. v. Bancroft Cruises, Ltd.*,
   2003 WL. 22400213 (S.D.N.Y. 2003)....................................................16, 17

*Excess Ins. Co. Ltd. v. Factory Mut. Ins. Co.*,
   769 N.Y.S.2d 487 (1st Dep't 2003).................................................................8

*Freeford Ltd. v. Pendleton*,
   -- N.Y.S.2d -- 2008 WL. 962626 (1st Dep't. April 10, 2008)......................11

*Friedson v. Lesnick*,
   1992 WL.  51543 (S.D.N.Y. 1992).........................................................16, 17

*Gillihan v. Morguelan*,
   299 Ky. 671, 186 S.W.2d 807 (Ct. App. 1945) ...........................................10

*ICC Indus., Inc. v. Israel Discount Bank, Ltd.*,
   2005 WL. 1844616 (S.D.N.Y. 2005)............................................................16

*Imagineering, Inc. v. Lukingbeal*,
    1996 WL. 148431 (S.D.N.Y. 1996)...............................................................................7

*J.M. Heinike Assoc., Inc v. Chili Lumber Co.*,
    443 N.Y.S.2d 512 (4th Dept. 1981)...........................................................................10

*Rey-Willis v. Citibank, N.A.*,
    2003 WL. 21714947 (S.D.N.Y. 2003).........................................................................7

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

U.S. BANK NATIONAL ASSOCIATION,

           Plaintiff,                   Case No. 08-CV-2540 (DC)

     vs.

ABLES & HALL BUILDERS, a Kentucky
General Partnership,  and

RONNIE ABLES,
DENNIS WADE ABLES, and
JAMES A. HALL,
its General Partners,

           Defendants.

**PLAINTIFF'S BRIEF IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

## I.    INTRODUCTION

The attempts by defendants Ables & Hall Builders ("Ables & Hall") and its General Partners Ronnie Ables, Dennis Wade Ables and James A Hall, (collectively, the "General Partners") to avoid the consequences of their freely chosen actions should be rejected, and their motion to dismiss denied.

The agreements executed by the parties clearly and unambiguously specify that New York law will apply to any disputes about the agreements, that any disputes will be venued in New York City and that the parties are barred from challenging the jurisdiction of, or venue in, the New York courts, including this Court.  Nevertheless, despite waiving their ability to challenge venue and jurisdiction, that is precisely what defendants attempt to do by their  present motion.  That attempt should be rejected, and defendants should be made to comply with the bargain they freely made, and defend this case on its merits.

Defendants' motion is premised on an untenable and unsupported assertion that defendants did not agree to be bound by the interest rate swap transaction agreements that they signed and whose benefits they enjoyed for over three years.  Their *post-hoc* claim that Darlene Ables, the admitted "Bookkeeper/Owner" of Ables & Hall, was somehow not authorized to bind Ables & Hall, despite signing the agreements in question with the words "Ables & Hall Builders" in script, is an untenable and unsupported factual argument that should be seen for what it is:  an meritless attempt at distraction.  Not only did Darlene Ables bind Ables & Hall, but Ronnie Ables, one of the General Partners who unquestionably had authority to bind the Partnership, signed one of the transaction agreements.

## II.    FACTS

When analyzing a motion to dismiss, a court's review of the "facts" is limited to the factual allegations of the complaint and the documents referenced therein.  *See See Prentice v. Apfel,* 11 F. Supp.2d 420, 424 (S.D.N.Y.1998).  AS such, much of the factual; allegtions in defendants' brief should be ignored.  They are not based on the allegations of the Complaint and in some instances are not based upon any support or citation to the record at all.[1]

As alleged in the Complaint, in 2004, Ables & Hall and U.S. Bank entered into an interest rate swap transaction related to certain underlying monies Ables & Hall had borrowed from U.S. Bank.  Ables & Hall is a Kentucky General Partnership and Ronnie Ables, Dennis Wade Ables and James A. Hall are its general partners.  In this interest rate swap transaction, Ables & Hall agreed to pay U.S. Bank a fixed rate of 5.07%, adding a credit spread of 2.25%, for an effective rate of 7.32% per month based upon a notional amount of $7,893,000.00.  In return,

---

[1]    Defendants' recitation of the allegations in their Kentucky Complaint is improper.  The allegations are included not to provide context, but are a transparent ploy by defendants to tarnish the image of U.S. Bank with this Court.  They are irrelevant to defendants' motion, and should be disregarded.  Moreover, U.S. Bank has denied the allegations in Kentucky, where it also moved for a stay pending this Court's action on this motion.

U.S. Bank agreed to pay Ables & Hall monthly payments at a floating, or variable, rate of the

U.S. Dollar LIBOR interest rate based upon a notional amount of $7,893,000.00.  Complaint ¶ 6.

 After entering into the interest rate swap transaction agreements with U.S. Bank, Ables &

Hall and its General Partners enjoyed a number of benefits.  By entering into the transaction,

Ables & Hall also avoided a $59,564.00 prepayment premium which would have been due on its

then fixed rate loan.  Additionally, Ables & Hall was able to reduce its effective interest rate on

$7,893,000.00 of debt from 7.70% to 7.32%.  Under the interest rate swap transaction, if the

LIBOR rate for any month was higher than 5.07%, U.S. Bank paid Ables & Hall the difference

in the interest rate.  On the other hand, if the LIBOR rate was lower than 5.07% for any given

month, Ables & Hall would pay U.S. Bank.  From July 2006 to November 2007, the LIBOR rate

was higher than 5.07% and Ables & Hall therefore collected some $25,749.00 in monthly

payments from U.S. Bank.  Conversely, since November of 2007, the LIBOR rate has dropped

below 5.07% and Ables & Hall has owed money to U.S. Bank for those months.  Complaint, ¶ 9

 The terms of the parties' mutual obligations in the interest rate swap transaction were

evidenced by three documents.  The first is entitled the "ISDA Master Agreement," dated June

29, 2004 ("Master Agreement") and is a standard agreement issued by International Swap

Dealers Association Incorporated ("ISDA") and is one of a series of similar forms published by

the ISDA which governs almost all interest rate swap transactions in the United States.  The

second is entitled "Schedule to the Master Agreement" ("Schedule") dated June 29, 2004 and

relates to and modifies the Master Agreement.  The third is a "Confirmation" letter dated July 2,

2004 (and amended November 5, 2004) from U.S. Bank to Ables & Hall reiterating the financial

terms and procedures in the interest rate swap transaction.  True and correct copies of the

Confirmation letter dated July 2, 2004 and the Amended Confirmation are attached to the Declaration of Jacob E. Miota as Exhibits A and B, submitted herewith. *See* Complaint ¶ 7.

The Master Agreement is signed by "Ables and Hall Builders," in script. The name printed under that signature is "Darlene Ables," who also signs her name in script on the "name line" and her title as "Bookkeeper/Owner." Master Agreement, p. 14. Similarly, the Schedule is signed by "Ables & Hall Builders" in script, and the name (in script) written under that signature is "Darlene Ables" who lists her title as "Bookkeeper/Owner." Schedule, p. 7. The July 2, 2004 Confirmation letter is counter-signed by "Ronnie Ables" as an "Owner" of Ables and Hall. July 2, 2004 Confirmation, p. 3. The November 5, 2004 Amended Confirmation is signed by "Darlene Ables" as Ables & Hall's "Bookkeeper." November 5, 2004 Confirmation, p. 3.

U.S. Bank and defendants also agreed in the interest rate swap transaction agreements that if the interest rate swap transaction was terminated prior to July 1, 2014, the interest rate swap would be "marked-to-market" and Ables & Hall would be a payor or a payee of U.S. Bank, depending upon the prevailing market swap rates at the time. Complaint, ¶ 9.

Pursuant to Section 11(a) of the Master Agreement and Part 3(e) of the Schedule, the parties' interest rate swap transaction is governed by the laws of New York. *See* Master Agreement at 10 and Schedule at 5. The parties consented to the jurisdiction of the State or Federal Courts of New York City in the Master Agreement. *See* Master Agreement, § 11(b) at 10. In addition to consenting to the jurisdiction of this Court over them and to the laying of venue in this Court, Ables & Hall waived its right to challenge such jurisdiction or venue:

> [Ables & Hall] waives any objection which it may have at any time to the laying of venue of any Proceedings brought in any such court, waives any claim that such Proceedings have been brought in an inconvenient forum and further waives

the right to object, with respect to such Proceedings, that such court does not have jurisdiction over such party.

*Id.*

## III.  <u>ARGUMENT</u>

Ables & Hall and its General Partners executed the interest rate swap transaction agreements and they are bound by them.  Their primary argument – that U.S. Bank "cannot prove" that Darlene Ables was authorized to sign the Master Agreement on behalf of Ables and Hall and therefore the agreements are somehow void – is too clever by half.  Defendants have not affirmatively asserted anywhere that Darlene Ables was not authorize to execute the Master Agreement on behalf of Ables & Hall.  Furthermore, as a preliminary matter, such argument cannot serve as a basis for a motion to dismiss.  The Master Agreement is signed by "Ables & Hall" and any argument by defendants that this signature is not proper or authorized requires facts outside the Complaint.  Indeed, it also requires discovery.  Secondly, defendants nowhere deny that Darlene Ables was not authorized to sign the documents.  Instead, they argue only that U.S. Bank "cannot prove" that she was.  Again, a dispute over proof of one of defendants' affirmative defense cannot justify dismissal of the Complaint. Issues of proof are for summary judgment and facts will come through discovery, but for Ables & Hall to deny the validity of the agreements it signed, including one that one of its General Partners executed himself, is preposterous.  Moreover, even assuming, *arguendo*, that Darlene Ables somehow was  not authorized to sign the Master Agreement, Ables & Hall still is unquestionably bound by the agreements in any event because it ratified the transaction many times.  Ables & Hall accepted a lower effective fixed rate on its loans in exchange for entering into the agreements, and as a result made and received monthly settlement payments pursuant.

Defendants' arguments with respect to jurisdiction and venue similarly rely on an argument that disavows the interest rate swap transaction agreements they entered into with U.S. Bank.  The Master Agreement is clear that the parties consent to jurisdiction and venue in this Court.  It also is clear that the parties waive any right they may have to challenge the personal jurisdiction of and venue in this Court.  Defendants cannot be allowed to pick and choose which contractual provisions they believe they should honor.  Finally, the General Partners of Ables & Hall are bound by the actions of the partnership such that if, as here, the partnership is subject to the personal jurisdiction of this Court, so are the General Partners.

A.    **Legal Standard.**

As this Court is aware, on a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) for failure to state a claim upon which relief can be granted, the Court must accept the factual allegations of the non-moving party as true and draw all reasonable inferences in its favor. *Bernheim v. Litt,* 79 F.3d 318, 321 (2d Cir. 1996); *Bell Atl. Corp. v. Twombly,* --- U.S. ----, 127 S.Ct. 1955, 1965, 167 L.Ed.2d 929 (2007). In its recent decision in *Bell Atlantic,* the Supreme Court modified the previously applicable standard, but did not establish a "universal standard of heightened fact pleading, but ... instead requir[ed] a flexible 'plausibility standard,' which obligates a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim plausible." *Iqbal v. Hasty,* 490 F.3d 143, 157-58 (2d Cir. 2007). The question is whether the pleading alleges "'enough facts to state a claim for relief that is plausible on its face.'" *Patane v. Clark,* 508 F.3d 106, 111-12 (2d Cir. 2007) (quoting *Bell Atl. Corp.,* 127 S.Ct. at 1974).  In deciding a motion to dismiss, a court may consider the challenged pleading, any documents incorporated by reference and matters subject to judicial notice. *See Prentice v. Apfel,* 11 F. Supp.2d 420, 424 (S.D.N.Y.1998) (citing *Brass v. Am. Film Techs., Inc.,* 987 F.2d 142, 150 (2d Cir.1993)).

Like motions to dismiss for failure to state a claim, when considering a motion to dismiss for improper venue, the Court must accept the facts alleged in the Complaint as true, and draw all reasonable inferences in plaintiff's favor. *See Rey-Willis v. Citibank, N.A.*, 2003 WL 21714947, at *3 (S.D.N.Y. 2003); *Imagineering, Inc. v. Lukingbeal*, 1996 WL 148431, *2 (S.D.N.Y. 1996) (internal quotations and citations omitted).

While plaintiff bears the burden of demonstrating that the Court has jurisdiction over the defendants on a motion to dismiss for lack of personal jurisdiction, *Kernan v. Kurz-Hastings, Inc.,* 175 F.3d 236, 240 (2d Cir. 1999) (citation omitted), at the pleadings stage, a plaintiff is required only to make a *prima facie* showing of jurisdiction. *DiBella v. Hopkins,* 187 F. Supp.2d 192, 198 (S.D.N.Y. 2002).

### B.    The Interest Rate Swap Transaction Agreements are not Void under the Statute of Frauds.

#### 1.    New York Law Governs This Issue

Defendants cite several cases for the proposition that the validity of a contract should be determined by the law at the "center of gravity" of the parties' transaction and arrive at the conclusion that the question of whether the Master Agreement satisfies the statute of frauds is governed by Kentucky law. Def. Br. at 11. Defendants' analysis is flawed, and ignores the fact that the Master Agreement and Schedule contain specific provisions regarding which law to apply: "Governing Law. This agreement will be governed by and construed in accordance with the laws of the State of New York (without reference to choice of law doctrine)." *See* Schedule, Part 3(d). New York law thus should apply, especially at the motion to dismiss stage, where all of U.S. Bank's allegations are deemed true.

Defendants show no conflict between the laws of Kentucky and New York with respect to the applicable provisions of the statute of frauds. While defendants cite Kentucky law for the

proposition that "a contract must be in writing and signed by the party to be charged therewith, or by his authorized agent' to be enforceable if it will not be performed within one year of its making,." Def. Br. at 12-13, the law is not different in New York. *See* General Obligations Law § 5-701(a)(1) ("Every agreement, promise or undertaking is void, unless it or some note or memorandum thereof be in writing, and subscribed by the party to be charged therewith, or by his lawful agent, if such agreement, promise or undertaking: 1. By its terms is not to be performed within one year from the making thereof."). Because the law on this issue is the same in both Kentucky and New York, and there is no real conflict, the law of the forum state – New York – applies. *See Wall v. CSX Transp., Inc.,* 471 F.3d 410, 422-23 (2d Cir. 2006) (citing *Excess Ins. Co. Ltd. v. Factory Mut. Ins. Co.,* 769 N.Y.S.2d 487, 489 (1st Dep't 2003)).

### 2. Defendants' Attacks on the Validity of the Interest Rate Swap Transaction Agreements Cannot be Resolved on a Motion To Dismiss

As discussed above, on a motion to dismiss the Court must accept the factual allegations of the non-moving party as true and draw all reasonable inferences in its favor. *Bernheim v. Litt,* 79 F.3d 318, 321 (2d Cir. 1996). Paragraphs 6 and 7 of the Complaint allege that U.S. Bank and Ables & Hall entered into an interest rate swap transaction and the Master Agreement. Those allegations must be accepted as true for purposes of defendants' motion. Indeed, reference to that Master Agreement reveals that it is signed by "Ables & Hall," the party U.S. Bank seeks to bind. Although Ables & Hall may have the right to pursue an affirmative defense that Darlene Ables, the individual who signed the Master Agreement on behalf of Ables & Hall and who is admitted to be an "owner" of Ables & Hall, somehow was not authorized to sign the Master Agreement and therefore that the interest rate swap transaction agreements are void, they cannot do so on a motion to dismiss.

**3.     The Interest Rate Swap Transaction Agreements are Valid and were Ratified by Defendants.**

Even if defendants could raise such an issue on a motion to dismiss, defendants' claim that the Master Agreement is invalid fails.  The Master Agreement complies with the statute of frauds.  It is signed, in script, by "Ables & Hall Builders."   Darlene Ables executed the Master Agreement on behalf of Ables and Hall, and also signed and printed her name and listed her title as "Bookkeeper/Owner" of Ables & Hall.  In short, there is absolutely no indication from the document that she was not authorized to execute the Master Agreement on behalf of Ables & Hall.  In fact, defendants do not argue that Darlene Ables was not so authorized.  Nor have defendants affirmatively asserted that she lacks authority to bind Ables & Hall.  Instead, defendants cleverly argue only that U.S. Bank "cannot prove" that Darlene Ables was so authorized.  That, of course, is not U.S. Bank's burden.

The allegations before the Court and the overwhelming evidence show that the Master Agreement, the Schedule and the Confirmation letters all were validly entered into and can be enforced against Ables & Hall.  The July 2, 2004 Confirmation letter, Exhibit A to the Miota Dec., is countersigned by Ronnie Ables, a defendant here and one of Ables & Hall's General Partners.  That confirmation is the culmination of the interest rate swap transaction agreements and Mr. Ables would not have signed it if Ables & Hall did not intend to be bound by the transaction.

Moreover, it is a dispositive fact that Ables & Hall ratified the Master Agreement, Schedule and Confirmation when it paid and accepted payment of monthly settlements for over two years under the transaction agreements.  Indeed, Ables & Hall collected some $59,000 in settlement payments from U.S. Bank when the interest rates were in their favor, and paid monthly settlement when interest rates were not.  Complaint ¶ 9.  Through these actions, Ables

& Hall ratified the interest rate swap transaction agreements, including the Master Agreement, and is bound even if Darlene Ables was not authorized to sign the agreements.  *See J.M. Heinike Assoc., Inc v. Chili Lumber Co.*, 443 N.Y.S.2d 512 (4th Dept. 1981) (under the doctrine of ratification, "a party is held liable as a principal as a result of his affirmance of an act done by one who purports to be acting for the ratifies.  It is not necessary that the person acting be the agent of the ratifier.") (citing Restatement, Agency 2d); *see also Gillihan v. Morguelan*, 299 Ky. 671, 674-75, 186 S.W.2d 807, 809 (Ct. App. 1945) (Kentucky follows the restatement and ratification is "the affirmance by a person of a prior act which did not bind him but was done or professedly done on his account, whereby the act, as to some or all persons, is given effect as if originally authorized by him").

    C.    **<u>This Court has Personal Jurisdiction over Ables & Hall and its General Partners.</u>**

        1.    **New York Statutory Law Gives this Court Jurisdiction over Defendants.**

It is well established in diversity cases that the issue of personal jurisdiction is governed by the law of the forum state, in this case, New York, which also happens to be the applicable law set by the interest rate swap agreements.  *See D.H. Blaire & Co., Inc. v. Gottdeiner*, 462 F.3d 95, 104 (2d Cir. 2006).  New York's General Obligations Law, § 5-1402, mandates enforcement of forum selection clauses found in contracts worth over $1 million where the parties submit to jurisdiction in New York. Specifically, § 5-1402(1) provides:

> [A]ny person may maintain an action or proceeding against a ... non-resident ... where the action or proceeding arises out of or relates to any contract ... covering in the aggregate, not less than one million dollars, and ... which contains a provision or provisions whereby such ... non-resident agrees to submit to the jurisdiction of the courts of this state.

The Master Agreement is just such a contract. In it, the parties "submit to the jurisdiction" of the "United States District Court located in … New York City." Further, in the Master Agreement, Ables & Hall

> … waives any objection which it may have at any time to the laying of venue of any Proceedings brought in any such court, waives any claim that such Proceedings have been brought in an inconvenient forum and further waives the right to object, with respect to such Proceedings, that such court does not have jurisdiction over such party.

Master Agreement, Section 11(b). And the interest rate swap transaction has a notional value and relates to loans to defendants of over $7.8 million. Complaint, ¶ 7. Under New York law then, jurisdiction over defendants is proper. *See Freeford Ltd. v. Pendleton* --- N.Y.S.2d ----, 2008 WL 962626, at *3 (1st Dep't. April 10, 2008) (exercising personal jurisdiction over parties to a contract worth over $1 million pursuant to consent-to-jurisdiction clause, even though "none of the parties reside in New York and none of the alleged conduct took place in New York").

### 2. Even if the New York Statute does not Apply, Defendants' Motion Still Fails.

As "[t]he personal jurisdiction requirement recognizes and protects an individual liberty interest," *Ins. Corp. of Ireland v. Compagnie des Bauxites de Guinee,* 456 U.S. 694, 702-03, 102 S.Ct. 2099, 72 L.Ed.2d 492 (1982) "it can, like other such rights, be waived." *Id.* at 703, 102 S.Ct. 2099. "[B]ecause the personal jurisdiction requirement is a waivable right, there are a 'variety of legal arrangements' by which a litigant may give 'express or implied consent to the personal jurisdiction of the court.' " *Burger King,* 471 U.S. at 472 n. 14, 105 S.Ct. 2174. For instance, "parties to a contract may agree in advance to submit to the jurisdiction of a given court." *Nat'l Equip. Rental, Ltd. v. Szukhent*, 375 U.S. 311, 316, 84 S.Ct. 411, 11 L.Ed.2d 354 *(1964)*. "[P]articularly in the commercial context, parties frequently stipulate in advance to submit their controversies for resolution within a particular jurisdiction." *Burger King,* 471 U.S.

at 472 n. 14, 105 S.Ct. 2174. When such understandings "have been obtained through 'freely negotiated' agreements and are not 'unreasonable and unjust,' their enforcement does not offend due process." *Id.* (quoting *The M/S Bremen v. Zapata Off-Shore Co.,* 407 U.S. 1, 15, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972)).

Defendants attempt a slight-of-hand when they argue that federal common law, rather than New York law, somehow applies to the issue of personal jurisdiction here. As shown below, defendants' attempt fails for a number of reasons. The authorities cited by defendants are without weight or import to the issues before the Court. Defendants cite a non-precedential decision from the Northern District for the proposition that "the legal standard governing consent-to-jurisdiction clauses is the same as the legal standard governing forum-selection clauses." Def. Br. at 15 (citing *Rescuecom Corp. v. Chumley,* 522 F. Supp. 2d 429, 444 (N.D.N.Y. 2007). From there, defendants rely on a Second Circuit case evaluating the validity of a forum selection clause in the context of a motion to dismiss for improper venue. The case relied upon has nothing to say about personal jurisdiction. *See Phillips v. Audio Active, Ltd.*, 494 F.3d 378 (2d Cir. 2007).

*Phillips* is a case inapposite to this case. There, the court attempted to determine "whether *to dismiss a claim* based on a forum selection clause." 494 F.3d at 383 (emphasis added). In *Phillips*, defendants invoked the forum selection clause in their contract with plaintiff in order to try to dismiss the case for improper venue. The contract there made England the obligatory venue and therefore the Second Circuit held that causes of action arising out of the contract had to be litigated in England. *Id.* at 393. This case is markedly different in that defendants here are not invoking the forum selection clause to say that this case cannot be venued in New York. Rather, they argue that the clause lacks any force or meaning because it

does not meet each of the four parts of the *Phillips* test.  In other words, defendants are not trying

to dismiss this case because of a forum selection clause, as was the case in *Phillips*, but instead

are trying to use *Phillips* to dismiss a forum selection clause.  *Phillips* is inapplicable to this case.

Moreover, *Phillips* outlined a four-part test for analyzing choice-of-forum clauses "*in the*

*absence of an applicable choice of law provision*."  494 F.3d at 384 (emphasis added).  In

particular, the *Phillips* court found that enforceability of "an otherwise mandatory and applicable

forum selection clause" should be governed by the standard set forth by the United State

Supreme Court in *M/S Bremen v . Zapata Off-Shore Co.*, 401 U.S. 1, 15 (1972).  *M/S Bremen*

held that a contractual choice of "forum clause should control absent a strong showing that it

should be set aside."  401 U.S. at 15.  On the other hand, reasoned the court in *Phillips*, there is

"less to recommend the invocation of federal common law to interpret the meaning and scope of

a forum clause, as required by parts two and three of our analysis." 494 F.3d at 385.  In this case,

of course, there is a choice of law provision in the parties agreement that designates New York

law, and under New York law, the consent-to jurisdiction clause found in the Master Agreement

confers jurisdiction over defendants to this Court.

Even if this Court were to apply the four part test from *Phillips*, the forum selection

clause still is valid and should be enforced.  The first part – whether the clause was reasonably

communicated to defendants – is satisfied by Ables & Hall entering into the Master Agreement.

Defendants do not claim that they were not aware of the Master Agreement or its forum selection

clause.  Instead, as with their argument with respect to the validity of the contract as a whole,

defendants contend that because the Master Agreement was signed by Darlene Ables, there is,

therefore, "no basis for concluding that the clause was reasonably communicated to the

defendants."  Def. Br. at 16.  As shown above, such an argument by defendants must fail here.

This is a motion to dismiss wherein defendants have proffered no evidence that Darlene Ables did not have authority to sign the Master Agreement, and therefore the allegation in the Complaint that Ables & Hall entered into the agreement must be accepted as true. Further, Ables & Hall performed under the Master Agreement for three years and offer no evidence that they were unaware of its forum selection clause. Indeed, they don't even allege such unawareness.

The second factor – whether the forum selection clause is permissive or mandatory – reveals why *Phillips* is inapplicable. It simply makes no sense to conclude that because the forum selection clause here is permissive rather than mandatory, the clause should be stricken from the contract. The only way this part of the *Phillips* test makes sense is if a party was trying to dismiss a case based on a forum selection clause that called for mandatory venue in another forum. There simply is no black-letter law that permissive forum selection clauses are void— and defendants point to none.[2]

The third factor – whether the claims and parties involved are subject to the clause – is again satisfied by the Master Agreement. Defendants do not dispute that the claims involved are subject to the clause; they only dispute that they themselves are subject to the clause. Defendants try to rely on the fact that Darlene Ables, and not one of the General Partners, signed "Ables & Hall" on the Master Agreement. Again, however, defendants provide no evidence that Darlene Ables was not authorized to sign the Master Agreement. And again, defendants ignore the fact that Ronnie Ables signed a Confirmation regarding the same interest rate swap

---

[2]    Even if this factor applied to this case, a permissive forum selection clause is not void as a jurisdictional predicate if there is some language indicating an intention to be bound by the jurisdiction chosen by plaintiff. *See Alland v. Consumers Credit Corp.*, 476 F.2d 951, 954 (2d Cir. 1973) (holding that a promissory note which authorizes enforcement in "any court of record in the United States" combined with a waiver of service of process constituted consent to New York federal court jurisdiction). Here, defendants waived their right to challenge U.S. Banks choice of forum.

transaction as the Master Agreement as well as the fact that they ratified the Master Agreement by accepting the benefits and burdens of the interest rate swap transaction. *See* Miota Ex. A; Complaint ¶ 9.

Defendants rely on *Bank of America, N.A. v. Hensley Properties, LP*, 495 F. Supp. 2d 435, 439 (S.D.N.Y. 2007) for the proposition that it would be unjust to enforce the Master Agreement's forum selection clause when defendants allegedly "did not sign" the contract. Def. Br. at 16. The same forum selection clause at issue here was held not to be binding in *Hensley* because the current owner of Hensley did not sign a Master Agreement but only signed a confirmation letter. That confirmation letter stated that the parties "promptly" would proceed to negotiate a Master Agreement. In other words, unlike here, there was no Master Agreement in *Hensley* related to the confirmation letter. *See Hensley* 495 F. Supp.2d at 438.

As such, *Hensley* is inapposite. In that case, there was no dispute that "when Bright [the current owner] signed the Confirmation, neither she nor any other representative of Hensley had been provided with a copy of the Master Agreement." 495 F. Supp.2d at 438. The court in *Hensley* relied on this lack of notice of the forum selection clause in the Master Agreement in refusing to enforce it. *Id.* at 438-39. Here, by contrast, Ables & Hall did sign the Master Agreement before signing the Confirmation nad defendants do not claim that Darlene Ables, who executed the Master Agreement on behalf of Ables & Hall, was not authorized to sign the Master Agreement or that they were unaware of the Master Agreement and its forum selection clause.

Defendants make a half-hearted argument that even if the forum selection clause is valid, it still should not be enforced because it would be unreasonable under the circumstances for

defendants to defend this case in New York. Def. Br. at 17.[3] According to defendants, "[t]rial in New York will be so difficult, expensive, and inconvenient that they will effectively be denied their day in court." *Id.* Defendants, however, offer no evidence or support for that claim. In any event, quick reference to *Phillips*, the case on which they rely for the rest of their argument on jurisdiction, reveals their "unreasonable" argument to be specious:

> The gap in Phillips reasoning is that his averments suggest that litigation in England may be more costly or difficult, but not that it is impossible. … In addition, Phillips has not declared any of his claimed hardships are other than the obvious concomitants of litigation abroad or were not foreseeable when he agreed to litigate in England.

*Phillips*, 493 F.3d at 393.

In sum, defendants ignore the relevant New York statute and mis-apply irrelevant and inapposite case law. Ables & Hall consented to the jurisdiction of this Court, and this Court should retain jurisdiction over it.

### D.      This Court has Jurisdiction over the General Partners Because it has Jurisdiction over the Partnership.

As demonstrated above, this Court has personal jurisdiction over Ables & Hall, the partnership, by virtue of the consent to jurisdiction clause in the Master Agreement. Pursuant to New York law, that means that this Court also has jurisdiction over the General Partners of Ables & Hall. *See Afloat in France, Inc. v. Bancroft Cruises, Ltd.*, 2003 WL 22400213, at *5 (S.D.N.Y. 2003) ("Where a court has personal jurisdiction over a partnership, either because of the partnership's activities as a whole or the actions of a single partner acting on behalf of the partnership, the court has jurisdiction over the general partners."); *Friedson v. Lesnick*, 1992 WL

---

[3]      In a footnote, defendants suggest that the Court may refrain from hearing this case even if it finds in favor of plaintiff on the jurisdiction and venue issues. Defendants cite to this Court's decision in *ICC Indus., Inc. v. Israel Discount Bank, Ltd.*, 2005 WL 1844616, at *5 (S.D.N.Y. 2005), buit that case is not applicable here. *ICC* involved a forum non conveniens motion, and the parties briefed and weighed all of the factors relevant to such a motion. Defendants has not so moved.

51543, at *2 (S.D.N.Y. 1992) ("courts have personal jurisdiction over general partners if the court has jurisdiction over the partnership itself, and the lawsuit arises out of partnership affairs"); *Wichita Fed. Sav. And Loan Assoc. v. Comark*, 586 F. Supp. 940, 943 (S.D.N.Y. 1984) ("New York case law establishes that non-resident general partners may properly be sued in the courts of this state as a result of the forum activities of a partnership.").

Again, the cases relied upon by defendants to argue that this Court does not have jurisdiction over the General Partners are inapposite. In *Falik v. Smith*, 884 F. Supp. 862 (S.D.N.Y. 1995), Falik sued Smith in the Southern District on an indemnity agreement signed by Smith, who was a partner in a New Jersey general partnership, Smith Associates. Smith Associates was not a party to the litigation. In deciding a motion to dismiss for lack of personal jurisdiction, the court found that the indemnification agreement called for the application New Jersey law, not New York law, that Smith did not have sufficient contacts with New York and that Smith Associates did not do business in New York. *Falik*, 884 F. Supp. at 865-66. In *dicta*, the court found that even if it had jurisdiction over Smith Associates, "this would not necessarily convey jurisdiction over its general partner Smith." *Id.* at 866. The *Falik* court did not cite to any New York cases, state or federal. Nor did it engage in an analysis of New York law. This case is far different than *Falik*. Here, the partnership is a party to the case, and signed the Master Agreement containing a consent-to-jurisdiction clause in which it submitted to the jurisdiction of this Court. This Court has jurisdiction over the General Partners of Ables & Hall.[4]

---

[4] The other cases relied upon by defendants are not entitled to any weight at all on this issue. The cases are from the Eastern District of Kentucy and the 9th Circuit. *See* Def. Br. at 18, citing *Guy v. Layman*, 932 F. Supp 180 (E.D. Ky. 1996*); Sher v. Johnson*, 911 F.2d. 1357, 1365-66 (9th Cir. 1990). Neither are precedential and neither applies New York law. *Afloat in France, Friedson* and *Comark* apply New York law and are persuasive authority here.

### E.    <u>Venue is proper in New York.</u>

Defendants' final argument is that venue is improper in New York. Defendants rely primarily on their argument that the Master Agreement is invalid under the statute of frauds and therefore the provision in the agreement permitting venue in New York also is invalid. Def. Br. at 19-20. Ables & Hall entered into the Master Agreement and subsequently ratified it by its own conduct, as well as the conduct of its General Partners, as shown above.

Ables and Hall has waived its right to challenge venue in this Court. Section 11(b)(ii) of the Master Agreement provides that each party irrevocably "waives any objection which it may have at any time to the laying of venue" in New York. Defendants' venue challenge is in direct conflict with that provision, and should therefore be denied.

For the same reason that the General Partners are subject to the jurisdiction of this Court by virtue of this Court's jurisdiction over the partnership, this Court is a proper venue for claims against the General Partners relating to the interest rate swap transaction agreements, which identify New York as the venue and which waives challenges to this venue. Ables & Hall, and therefore its General Partners, agreed to the laying of venue in this Court and this Court should not save them from their agreement with U.S. Bank. *See Wichita Fed. Sav. And Loan Assoc. v. Comark*, 586 F. Supp. 940, 943 (S.D.N.Y. 1984) ("New York case law establishes that non-resident general partners may properly be sued in the courts of this state as a result of the forum activities of a partnership.").

## IV.    <u>CONCLUSION</u>

For the foregoing reasons, defendants' motion to dismiss should be denied.

Dated this 2nd day of May, 2008

**Michael Best & Friedrich LLP**


By:  _s/ Jacob E. Miota_____
Jacob E. Miota
100 E. Wisconsin Ave., Suite 3300
Milwaukee, WI  53202-4108
Phone  414.271.6560
Fax  414.277.0656

-and-

**SASSON & BLAIVAS LLP**
Moshe Sasson
488 Madison Ave., 18th Floor
New York, NY  10022
Phone 212.949.7501
Fax  212.949.7502

*Attorneys for Plaintiff U.S. Bank, NA*